■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN DONELLO, Appellant. — Appeal by defendant from a judgment of the Supreme Court,

Queens County (Kellam, J.), rendered April 29, 1983, convicting him of criminal possession of stolen property in the second degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial of defendant's motion to suppress physical evidence (Dubin, J.). ¶ Judgment reversed, on the law and the facts, guilty plea vacated, motion to suppress physical evidence granted, and case remitted to Criminal Term for further proceedings. ¶ On May 20, 1982, at approximately 7:00 P.M., a police officer, assigned to patrol the parking lot at LaGuardia Airport, observed defendant enter the parking lot and walk toward a blue BMW, turning his head left to right several times. The officer testified that the parking lot had been the scene of numerous instances of car thefts, especially BMW's, and vandalism. When defendant reached the BMW, he opened the car in "a second or two", went directly under the front seat and removed a manila type envelope. Defendant looked around again, unzipped his "blue type windbreaker jacket", placed the envelope "by his chest area", and zipped his jacket back up. The defendant then left the parking lot, entered a Chevrolet wagon, placed the envelope under the front seat and drove away. The jacket worn by defendant had the word "Astro" on it, and the Chevrolet had the words "Astro Limousine" on it. ¶ The police officer followed in his car, and, after activating his light and siren, made the defendant pull over. Defendant produced his license and registration, pursuant to request, and the officer then asked him if he owned another car at the airport. After defendant answered in the negative, the officer specifically asked him whether he owned the BMW that he had recently entered. The defendant admitted that he did not own that car and stated that a "male Caucasian, well dressed, had given him an amount of money, $50 to enter that vehicle and to obtain the package out of that vehicle". Defendant further stated that he was to meet the man in front of the American Airlines terminal. Defendant showed the officer the $50 and the keys to the BMW. A backup car arrived, and the officer then opened the Chevrolet wagon and saw the partially exposed manila envelope under the front seat. The officer entered the vehicle, seized the manila envelope, examined it through an existing tear in the right-hand corner, and ascertained that it contained "some type of stock certificate". Defendant was then given *Miranda* warnings, and agreed to ride with the police to the American Airlines terminal. They waited at that site for one half an hour, and, when no one came to retrieve the package, defendant was taken to police headquarters, where further investigation revealed that the securities had been stolen. Defendant was then formally arrested and charged. ¶ At the conclusion of a suppression hearing, defense counsel moved to suppress the contents of the seized envelope on the grounds that (1) at the time defendant removed the manila envelope from the BMW, the police did not have reasonable suspicion that a crime was being committed, and therefore had no right to forcibly stop him after he drove away in his Chevrolet, and (2) even if reasonable suspicion existed to justify the initial stop, the defendant's responses to the police inquiries were consistent with his prior conduct and did not raise the level of suspicion to one of probable cause to arrest. ¶ The People argue in opposition that (1) the initial stop of defendant's vehicle was based on reasonable suspicion that a crime was being committed and therefore was proper, and (2) once defendant stated that he did not own another car at the airport, that response "rais[ed] the level of suspicion even higher at that point" which justified the search of the car and the seizure of the manila envelope. ¶ In denying defendant's motion to suppress, Criminal Term held that the initial stop of defendant's car was proper. With respect to the search of defendant's car and the seizure of the envelope therefrom, Criminal Term held in relevant part: "When the defendant stated he did not own any other car in the parking lot, the police officer, having observed the defendant enter a

different car and remove its contents, was justified in believing that the defendant had just committed a crime." ¶ It is well settled that "absent at least a *reasonable* suspicion that its occupants had been, are then, or are about to be, engaged in conduct in violation of law, the stopping of an automobile by the police constitutes an impermissible seizure" (*People v Sobotker*, 43 NY2d 559, 563). ¶ It is true that the defendant, a limousine chauffeur, was walking in his normal business environs, i.e., the airport, when he was initially observed by the police, and did not have to force the BMW open, or rummage in it, before retrieving the manila envelope. Nevertheless, the police possessed reasonable suspicion of criminal activity based on (1) the fact that the parking lot in LaGuardia Airport was the scene of numerous instances of theft, (2) the actions of the defendant in looking around as he both approached and left the BMW, and (3) defendant's act of secreting the manila envelope under his jacket (*People v Thurman*, 81 AD2d 548). Accordingly, Criminal Term correctly held that the police acted properly in stopping defendant's car and asking preliminary questions (*People v Sobotker, supra; Terry v Ohio*, 392 US 1; CPL 140.50). ¶ However, we disagree with Criminal Term's holding that defendant's responses raised the level of suspicion to that of probable cause and therefore justified the search by the police of the defendant's car and the seizure of the envelope. The defendant did not give any evasive or patently false answers to the questions proposed by the officers (see *People v Moore*, 47 NY2d 911; *People v Thurman, supra; People v Hernandez*, 77 AD2d 548), but rather admitted that he entered the BMW and gave an explanation for that act, which on its face, was reasonable. Moreover, the defendant's explanation took on a greater ring of truth when he showed the keys to the BMW and the $50 to the police officer. Finally, there was no evidence adduced at the suppression hearing that the police, prior to the search of the Chevrolet, possessed any information that the envelope might have contained a weapon or contraband. Under these circumstances, defendant should have been allowed to leave after the preliminary inquiry by the police ended. Accordingly, the seizure of the envelope was improper and the motion to suppress the contents thereof should have been granted (*People v Cunningham*, 50 AD2d 69). Titone, J. P., Lazer, Mangano and O'Connor, JJ., concur.