■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GERALD WEEKS, Appellant.—Appeal by the defendant from a judgment of Supreme Court, Richmond County (Felig, J.), rendered October 15, 1986, convicting him of burglary in the third degree, criminal mischief in the fourth degree, petit larceny, criminal possession of stolen property in the third degree, and possession of burglar's tools, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement authorities and physical evidence.

Ordered that the judgment is affirmed.

The police knew that a theater had been burglarized in the early morning hours of December 6, 1985. It had been snowing lightly with an accumulation of about 1/16 of an inch. The theater safe had been tampered with but not opened and an empty coin box for a video machine was found inside the theater. The officers became aware that access to the theater had been gained through a trap door in the ceiling. The door was bent and ajar. On looking at the roof from the ladder to the trap door, Police Officer Frank LaSpina observed boot tracks coming from and returning to the roof of an adjacent building. The prints were described as being "ridged, had riffles in them, with two circular type designs on the sole and on the heels". The police then left the theater.

Soon thereafter Officer LaSpina and two other officers saw the defendant on a side street walking towards Hylan Boulevard but took no action. The police then returned to the theater parking lot, and spoke to a taxicab company employee who gave them a description of a man who had passed his taxi stand coming from the direction of the theater shortly before the police first arrived. The description matched the man the police had just seen on the side street. The single track of footprints between the theater and the cab office and at the place the police first saw the defendant had the same distinctive design as those seen on the roof of the theater. The police followed the single set of footprints from the side street for 6 or 7 blocks along Hylan Boulevard until they led directly to the defendant.

The defendant stood at a bus stop on Hylan Boulevard with a shoulder bag on his arm. The police approached and asked him his name and where he had come from. At this time, the defendant would not have been free to run away. The defendant gave his correct name and explained that in returning

from his girlfriend's house, intending to go to the ferry, he had mistakenly gotten off the bus and had proceeded to walk the length of Hylan Boulevard to the ferry.

Police Officer LaSpina was not satisfied with the defendant's answer since he previously had seen the defendant on the side street. During the questioning, the defendant kept moving his shoulder bag which also drew LaSpina's attention. The defendant was asked what was in the bag to which he responded that the bag contained only clothes. LaSpina, again dissatisfied because he observed there was "weight" to the bag, asked defendant "Do you mind if we look in the bag?". The defendant then moved the bag to his front and opened it, partially removing clothes. As the clothes came out, the bag collapsed, its contents made a jingling metallic noise, and there was a bulge on the side of the bag that LaSpina took to be the handle of a gun. LaSpina, fearing there was a weapon inside the bag, grabbed the bag and reached in it. Inside the bag was a crowbar, "a whole bunch of quarters", a screwdriver and a wrench. The defendant was then placed under arrest.

The hearing court found the officer's testimony credible and on this record there is no reason to question that finding (see, People v Mustafa, 126 AD2d 674, lv denied 69 NY2d 831). We determine that the initial detention and questioning of the defendant was proper since the police had a reasonable suspicion that the defendant was the burglar based on Police Officer LaSpina's observation that the footprints on the roof of the burglarized theater were of the same type as those which led directly to the defendant at the bus stop (People v Cantor, 36 NY2d 106, 111).

The subsequent seizure of the shoulder bag and its contents was also proper. The defendant voluntarily opened the bag and displayed its contents to the officer (see, People v Meredith, 49 NY2d 1038; cf., People v Gonzalez, 39 NY2d 122). The metallic noises and the appearance of a bulge, warranted the inspection of the bag for a weapon under the circumstances (see, People v Chestnut, 51 NY2d 14, 20-21, cert denied 449 US 1018).

Since the police already knew that the metal trap door had been forced open and the coin box removed from the video machine, the discovery of the crowbar and coins in the defendant's possession escalated their reasonable suspicion to probable cause that he was the burglar so as to justify the defendant's arrest (see, People v Bigelow, 66 NY2d 417, 423; People v Holt, 121 AD2d 469, lv denied 68 NY2d 813).

The court properly denied suppression of the statements made by the defendant after a valid arrest and the administration of *Miranda* warnings. Thompson, J. P., Brown, Eiber and Sullivan, JJ., concur.